UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK LETOSKI and ROGER FOX, <br><br> Plaintiffs, <br><br> v. <br><br> THE COCA-COLA COMPANY, <br><br> Defendant. | No. 23 CV 238 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Defendant Coca-Cola Company manufactures and sells flavored beverages under its Fresca brand. Plaintiffs Mark Letoski and Roger Fox purchased two Fresca products: black cherry citrus sparkling soda water and grapefruit citrus sparkling soda water. Letoski and Fox allege that the product labels were deceptive and misleading. Plaintiffs seek to represent a class of consumers and bring claims against Coca-Cola for violating the Illinois Consumer Fraud Act, the Vermont Consumer Fraud Act, and other state consumer protection statutes. Plaintiffs also bring claims for breach of implied and express warranty, negligent misrepresentation, fraud, and unjust enrichment. Coca-Cola moves to dismiss the claim brought by plaintiff Fox for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and all other claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion is granted in part and denied in part.

I.  **Legal Standards**

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. Illinois courts exercise jurisdiction to the limit set by the Fourteenth Amendment's Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). When a defendant moves to dismiss based on lack of personal jurisdiction, the plaintiffs bear the burden of establishing a prima facie case of jurisdiction. *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 860 (7th Cir. 2024).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim. A complaint must contain "a short and plain statement" showing that the plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

A plaintiff alleging fraud or deceptive practices under the Illinois Consumer Fraud Act must meet the heightened pleading standard of Rule 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Under Rule 9(b), a plaintiff "must plead with particularity the circumstances constituting fraud" and identify "the who, what, when, where, and how" of the alleged fraud. *Id.*

**II.      Facts**

Defendant Coca-Cola manufactured, labeled, and sold flavored "sparkling soda water" under its Fresca brand. [1] ¶ 1.[1] Plaintiffs Mark Letoski and Roger Fox bought two Fresca products in Illinois and Connecticut, respectively: the black cherry citrus and grapefruit citrus flavors. *Id.* ¶¶ 29–30. Both products were labeled as "sparkling soda water."



*Id.* ¶ 1. The front of the can included smaller pictures of cherries and grapefruits above the "Fresca" label, nestled between the text "ESTD" and "1966."

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' complaint, [1].

3



*Id.* ¶ 8. The bottom left of the front label contained the following text:



*Id.* ¶ 6. The ingredient lists for both products included, among other things, aspartame, citric acid, and concentrated grapefruit juice.



*Id.* ¶ 9.

Both Fresca products were labeled as "sparkling soda water." [1] ¶ 5. Plaintiffs allege that consumers understand "sparkling water," "soda water," "seltzer water," and "fizzy water" to be synonymous with carbonated water—without added sweeteners or flavorings. *Id.* ¶ 2. Plaintiffs cite to a blog post by a commentator stating that a key feature of soda water is the absence of sugar and/or artificial sweeteners. *Id.* ¶ 3. The ingredient lists included aspartame, which is an artificial sweetener. *Id.* ¶¶ 5, 9. Plaintiffs say this is deceptive because consumers understand sparkling soda water as describing a drink without added sweeteners. *Id.* ¶¶ 5, 31–32.

4

Letoski alleges that the front-label pictures of cherries and grapefruits lead customers to expect non-negligible amounts of fruit ingredients.[2] [1] ¶ 8. But the ingredient lists showed that the products contained only "concentrated grapefruit juice" and "citric acid." *Id.* ¶¶ 8–9. Plaintiff alleges that the products contained more of the additive citric acid than grapefruit juice. *Id.* ¶ 10. The black cherry citrus flavor product contained no cherry ingredients. *Id.* ¶ 12. According to a flavor expert, the products would contain more grapefruit and cherry ingredients than additives if the products "provided all the flavor depth and benefits of grapefruits and cherries." *Id.* ¶ 14. Letoski says that the front-label statements disclosing natural and artificial flavors did not give notice to consumers that the products lacked any meaningful amount of grapefruit and cherry ingredients. *Id.* ¶ 15. Based on the depictions of fruit, Letoski expected a non-de minimis amount of grapefruit, cherry, and citrus ingredients in the products. *Id.* ¶ 33. He also expected the citrus flavoring to be based on citrus ingredients rather than citric acid. *Id.* ¶ 34.

If plaintiffs had known about the true nature of these products, they would have paid less for the products or not have purchased the products at all. [1] ¶¶ 36–37. They bring state-law claims under the Illinois Consumer Fraud Act, the Vermont Consumer Fraud Act, other state consumer protection statutes, breach of implied and

---

[2] The complaint alleges that both plaintiffs understood "sparkling soda water" to mean unsweetened carbonated water, but only Letoski understood the fruit depictions to promise a certain amount of grapefruit, cherry, and citrus ingredients. [1] ¶¶ 31–34.

5

express warranty,[3] negligent misrepresentation, fraud, and unjust enrichment.[4] [1] ¶¶ 45–73.

## III. Analysis

### A. Personal Jurisdiction

When a federal court sits in diversity, the court exercises personal jurisdiction to the same extent as a state court. *See Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023). The Illinois long-arm statute applies, 735 ILCS 5/2-209(c), and is coextensive with the Fourteenth Amendment's Due Process Clause. *See Tamburo*, 601 F.3d at 700. Specific personal jurisdiction, the only issue here ([21] at 19–20), requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). There must be: "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out

---

[3] Plaintiffs voluntarily dismiss their Magnuson-Moss Warranty Act claim. *See* [22] at 9 n.1.

[4] The court has subject matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which creates federal jurisdiction if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA jurisdiction is satisfied because plaintiffs allege that the class includes more than 100 class members; minimal diversity is met because plaintiffs are citizens of Illinois and Vermont and defendant is a citizen of Delaware and Georgia; and the amount in controversy alleged exceeds $5,000,000. [1] ¶¶ 19–23, 24–27.

of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Samsung SDI Co.*, 91 F.4th at 861.

This court lacks specific personal jurisdiction over Coca-Cola for the claim brought by Fox. Fox is a citizen of Vermont and purchased the Fresca products in Connecticut. [1] ¶¶ 26, 30. Fox does not allege that Coca-Cola had any contacts with Illinois related to his purchases in Connecticut. Plaintiffs argue that *Bristol-Myers* is irrelevant because it relies on mass torts principles, but a connection between the defendant, the forum state, and underlying controversy is a prerequisite of specific personal jurisdiction regardless of subject matter. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). And named class members like Fox must demonstrate specific personal jurisdiction. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[N]amed representatives must be able to demonstrate either general or specific personal jurisdiction."). There is no specific jurisdiction over Coca-Cola for Fox's claim, so Fox's claim is dismissed.

### B. Illinois Consumer Fraud Act

Letoski brings claims under the Illinois Consumer Fraud Act and other state consumer protection statutes.[5] [1] ¶ 38. The core prohibitions of these state statutes

---

[5] Letoski invokes the consumer protection statutes of Illinois, Vermont, Utah, North Dakota, Kansas, Mississippi, Arkansas, Alaska, and South Carolina. [1] ¶ 38. Defendant does not challenge the sufficiency of claims under any specific statute other than the Illinois Consumer Fraud Act.

are "interpreted for the most part interchangeably," so I apply the reasonable consumer standard. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). "A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Beardsall,* 953 F.3d at 973. This "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474–75. A deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell*, 982 F.3d at 476. But claims based on "unreasonable or fanciful interpretations" of labels may be dismissed as a matter of law. *Id.* at 477.

Letoksi takes issue with two representations on the Fresca product labels: the pictures or "vignettes" of fruits on the front label and the description of the product as "sparkling soda water." [1] ¶¶ 31–34.

The front labels for the black cherry citrus and grapefruit citrus products contained small pictures of cherries and citrus, respectively. Letoski claims these depictions of fruit are misleading to consumers because they cause consumers to expect non-negligible amounts of these fruit ingredients, but the ingredient lists revealed a "de minimis amount of citrus" and no cherry ingredients. [1] ¶¶ 8–9, 12.

8

Defendant argues that this claim is preempted by the Food and Drug Administration's regulations on fruit flavor designations. [21] at 12–13.

The Food, Drug, and Cosmetic Act regulates food labeling in the United States. 21 U.S.C. §§ 301, *et seq*. It bars private rights of action, 21 U.S.C. § 337(a), and (through an amendment by the Nutrition Labeling and Education Act) preempts states from imposing regulations on food labeling that are "not identical to" the federal regulations. 21 U.S.C. § 343-1(a). The "not identical to" principle preempts state requirements that "directly or indirectly" impose obligations that aren't imposed by any federal implementing regulation or merely "differ from those specifically imposed" by the implementing regulations. 21 C.F.R. § 100.1(c)(4). But state-law claims that would not require a different label than the one required by federal regulations are not preempted. Consumers can "enforce a violation of the [Food, Drug, and Cosmetic] Act as a violation of state law." *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).

The FDCA regulates any label that "makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means." 21 C.F.R. § 101.22(i). Such representations of a "characterizing flavor" require certain disclosures, which should be displayed in letters at least one-half the height of the letters used in the name of the food. *Id.* If a food is commonly expected to contain a characterizing food ingredient, like strawberries in "strawberry shortcake," and it contains "natural flavor" derived from the ingredient and an insufficient amount of characterizing ingredient to

9

independently characterize the food or it lacks the ingredient at all, then "the name of the characterizing flavor may be immediately preceded by the word 'natural' and shall be immediately followed by the word 'flavored.'" *Id.* § 101.22(i)(1)(i). So, a strawberry shortcake containing natural flavor derived from strawberry would be appropriately labeled as "natural strawberry flavored shortcake" or "strawberry flavored shortcake." *Id.* "If none of the natural flavor used in the food is derived from the product whose flavor is simulated," then the product should be labeled "either with the flavor of the product from which the flavor is derived or as 'artificially flavored.'" *Id.* § 101.22(i)(1)(ii). If the food contains both a characterizing flavor and other natural flavor which stimulates, resembles or reinforces the characterizing flavor, the label should include the name of the food followed by "with other natural flavor." *Id.* § 101.22(i)(1)(iii). If the food contains "artificial flavor which simulates, resembles or reinforces the characterizing flavor," then the common or usual name of the characterizing flavor must be accompanied by the words "artificial" or "artificially flavored" (e.g., "artificially flavored strawberry"). *Id.* § 101.22(i)(2).

Letoski concedes that the regulations dictate that a "fruit vignette" is a representation to the primary characterizing flavor rather than a guarantee about the presence of fruit ingredients. [22] at 15. Rightly so, as many courts have dismissed as a matter of law claims that allege a defendant's representations as to a flavor is understood by a reasonable consumer to be a representation about the amount of an ingredient in a product. *See Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1102–03 (N.D. Cal. 2012) ("[U]nder 21 C.F.R. § 101.22(i), a product may be labeled as 'fruit

10

flavored' or 'naturally flavored,' even if it does not contain fruit or natural ingredients."); *Akers v. Costco Wholesale Corp.*, 631 F.Supp.3d 625, 633–34 (S.D. Ill. 2022) (dismissing claim based on allegation that "black raspberry flavor" label on sparkling water product equated to a promise about ingredients rather than flavor); *Angeles v. Nestle USA, Inc.*, 632 F.Supp.3d 309, 316 (S.D.N.Y. 2022) (same but as to sparkling mineral water with the label "Lemon & Lemon Zest"); *Oldrey v. Nestle Waters N. Am., Inc.*, No. 21 CV 03885 (NSR), 2022 WL 2971991, at *3 (S.D.N.Y. July 27, 2022) (same but as to sparkling water with the label "With a Twist of Raspberry Lime" and pictures of raspberries and limes); *see also Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) (rejecting conclusory allegation that product labeled "Premium Vanilla Ice Cream" was a promise that the product contained a non-negligible amount of extracts from vanilla beans).

Both Fresca products complied with the FDCA's disclosure requirements for characterizing flavors. The bottom left of the black cherry citrus product contained the text in all caps, "sparkling soda water black cherry citrus flavor with other natural & artificial flavors." *Id.* ¶¶ 6, 15. The characterizing flavor, black cherry, is not derived from actual cherries; it contains no cherry ingredients. [1] ¶¶ 8, 12. But the label appropriately disclosed the presence of "artificial flavors." *See* 21 C.F.R. § 101.22(i)(2). The other characterizing flavor, citrus, is derived in part from concentrated grapefruit juice. The label appropriately disclosed the presence of "other natural… flavors." *See id.* § 101.22(i)(1)(iii). The same goes for the grapefruit citrus

11

flavor, which contained the text at the bottom left of the front label in all caps, "sparkling soda water grapefruit citrus flavor with other natural flavors." [1] ¶¶ 6, 15. The disclosure that the product is flavored "with other natural flavors" is consistent with the regulations. *See* 21 C.F.R. § 101.22(i)(1)(ii). The FDCA expressly permits Fresca's product label and requires nothing more.

Still, Letoski argues that Coca-Cola did not comply with the regulations because the flavor disclosures were in small print in the lower corner of the cans where consumers may not notice it. [22] at 15. But the regulations only require that the disclosures be displayed in text at least one-half the height of the letters in the name of the characterizing flavor. 21 C.F.R. § 101.22(i)(1)–(3). Letoski doesn't allege that the bottom-left text on the Fresca cans was less than half the height of the "black cherry citrus" or "grapefruit citrus" text nor does it appear to be too small based on the images provided. *See* [1] ¶¶ 1, 16. The text disclosing natural and artificial flavors was not so far apart from the other labels that a consumer wouldn't have read them together—the flavor disclosure directly followed the text, "sparkling soda water." *Id.* ¶ 16. Because Coca-Cola's representations about the products' characterizing flavors are not reasonably understood to be representations about the amount of cherry or citrus ingredients in the product and Letoski attempts to impose labeling requirements beyond what is required by the FDA, Letoski's claim is dismissed as to any representations regarding "flavoring."

Letoski also challenges the labeling of Fresca products as "sparkling soda water" because the products contained the artificial sweetener aspartame. [1] ¶¶ 31–

12

32. Letoski understood "sparkling soda water" to refer to carbonated water without added sweeteners. *Id.* ¶¶ 2, 31. He points to an online blogger who found Fresca's label misleading because when they hear "soda water," they think of "club soda, which doesn't have sweeteners of any kind." *Id.* ¶ 3; [22] at 11. Letoski also relies on an FDA standard of identity defining "soda water" as "the class of beverages made by absorbing carbon dioxide in potable water… which is neither flavor nor sweetened." [1] ¶ 4 (citing Soda Water; Final Order Promulgating Definition and Standard of Identity, 31 Fed. Reg. 1066 (Jan. 27, 1966)). Coca-Cola argues that "soda water" makes no representation about the presence of non-nutritive sweeteners. [21] at 15. It also points out that the FDA repealed the standard of identity defining soda water and declined to impose Letoski's suggested labeling requirement of "artificially sweetened [sparkling] soda water." *Id.* at 13 (citing Nonalcoholic Beverages, 54 Fed. Reg. 18651 (May 2, 1989) (repealing 21 C.F.R. § 165.175)).

Letoksi may not rely on a repealed FDA standard of identity for soda water to show that Coca-Cola's label is misleading, but he still has a plausible claim that reasonable consumers expect "sparkling soda water" to contain no sweeteners, real or artificial. The allegation of how a reasonable consumer understands "sparkling soda water" or "soda water" is not a fanciful or unreasonable interpretation as a matter of law. Letoksi relies on his and Fox's perception of the product label and points to one consumer's take on Fresca products. At this stage, that is enough. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) ("[Plaintiff's] assertion that she and others attach importance to the size of a package

13

is enough for now to indicate that a 'reasonable consumer' does so too."). Reasonable consumers might understand "sparkling soda water" as containing no artificial sweeteners. Coca-Cola argues that even if "soda water" evokes plain carbonated water, no reasonable consumer would read it that way in the context of the Fresca label, which makes the fruit flavoring clear. [21] at 16. It may be that a reasonable consumer expects "sparkling soda water" to be devoid of any artificial sweetener but doesn't have the same expectation if the sparkling soda water is flavored. But it is not clear as a matter of law that flavoring in a sparkling water product dispels a reasonable consumer's expectation that the product is sweetener-free. Flavoring and sweetening may be understood as different representations, just as flavoring is not construed as a promise of real fruit ingredient content.

Defendant argues that "aspartame" was in the ingredient list of the back-label, which adequately disclosed the presence of an artificial sweetener. It also points out that the labels contained the FDA-required disclosure for products containing aspartame: "PHENYLKETONURICS: CONTAINS PHENYLALANINE."[6] [21] at 16. But a black-label disclosure does not necessarily immunize a defendant's front-label claim. *Bell*, 982 F.3d at 477 ("[T]he reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label."). The presence of aspartame in the back-label ingredient list or the FDA-disclosure for aspartame does not render

---

[6] The aspartame disclosure is not visible on the product images provided in the complaint. Because the product labels are central to the claim and Letoski does not object, I take judicial notice of the disclosure. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

14

plaintiffs' claim unreasonable. And reasonable consumers may not know that the phenylketonurics disclosure is a reference to an artificial sweetener. Ultimately, how reasonable consumers actually understand "sparkling soda water" is a matter of fact that is "subject to proof that can be tested at trial." *Id.* at 481. Consumer surveys or other market research might establish that Letoski and Fox's perceptions don't actually reflect reasonable consumer expectations. But for now, Letoski plausibly alleges that reasonable consumers would understand that "sparkling soda water" was a representation that the product was free of artificial sweeteners.[7]

### C. Breach of Express and Implied Warranty

Letoski brings claims for breach of express and implied warranty.[8] [1] ¶¶ 51–64. To state a claim for breach of express warranty, he must allege that defendant breached an "affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill.App.3d 354, 360 (1st Dist. 2007). To state a claim for breach of implied warranty of merchantability, he must allege "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Sci. Corp.*, 204 Ill.2d 640, 645 (2003); 810 ILCS 5/2-314. To be merchantable, the goods must be fit

---

[7] Letoski argues that the front-label of products must include the disclosure "Artificially Sweetened [Flavored] Sparkling Soda." [22] at 17. They erroneously rely on the FDA's repealed standard of identity for soda water. In any case, a finding that the "sparkling soda water" label is plausibly misleading is not a finding that a certain type of disclosure is required as a matter of law.

[8] The parties apply Illinois law. *See Paulsen v. Abbott Laboratories*, 39 F.4th 473, 477 (7th Cir. 2022) (citations omitted) (noting that federal courts sitting in diversity apply the choice of law rules of the forum state, and under Illinois choice-of-law rules, the forum state's law applies unless an actual conflict is shown or the parties agree that forum law doesn't apply).

15

for the ordinary purpose for which such goods are used. 810 ILCS 5/2-314(2)(c). A showing of a breach of an express or implied warranty generally requires privity of contract between a plaintiff and a seller of a good. *See Collins Co. v. Carboline Co.*, 837 F.2d 299, 301 (7th Cir. 1988) (express warranty claims) *and Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) (implied warranty claims).

Defendant doesn't argue that Letoski failed to satisfy pre-suit notice requirements under Illinois law. It also doesn't dispute privity. [21] at 17–18; [23] at 16–17. It argues that the express warranty claim fails because there is no allegation of an express affirmation of fact; at most, there is an implied representation. Letoksi says that the label "sparkling soda water" constitutes an affirmation of fact that the product did not contain additional sweeteners. [22] at 18. I agree with Letoski; the statement "sparkling soda water" plausibly affirms that the products were sweetener-free carbonated water, which Letoski alleges was the basis of the bargain. Letoksi also alleges that defendant breached this affirmation because the products contain aspartame. This is sufficient to state a claim for breach of express warranty.

As for the implied warranty claim, Letoski doesn't allege what the ordinary purpose of the products was and how the Fresca products weren't fit for those purposes. He merely repeats that the products were unfit because they contained sweeteners and a non-de minimis amount of fruit ingredients. [1] ¶¶ 63–64. If the ordinary purpose of sparkling soda water is consumption as a drink, then plaintiffs would have to allege how the presence of aspartame made the products unfit for that purpose. *See, e.g., Shoop v. DaimlerChrysler Corp.*, 371 Ill.App.3d 1058, 1065 (1st

16

Dist. 2007) ("With regard to automobiles, fitness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free from defects.") (cleaned up); *Solvay USA v. Cutting Edge Fabrication*, Inc., 521 F.Supp.3d 718, 726 (N.D. Ill. 2021) ("A plaintiff's allegation that the goods were not merchantable at the time of sale should be supported by an allegation of what the ordinary purpose of the good is."). The complaint lacks that key allegation. The claim for breach of implied warranty is dismissed.

### D. Negligent Misrepresentation

To state a claim for negligent misrepresentation, Letoski must allege that (1) the defendant had a duty to the plaintiff to communicate accurate information; (2) the defendant made a false statement of material fact to the plaintiff; (3) the defendant negligently failed to ascertain the truth of that statement; (4) the defendant made the statement intending to induce the plaintiff to act; (5) the plaintiff acted in reliance on the truth of that statement; and (6) the plaintiff suffered damage due to that reliance. *See First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 332 (2006) (citations omitted); *see Kemper/Prime Indus. Partners v. Montgomery Watson Americas, Inc.*, 487 F.3d 1061, 1064 (7th Cir. 2007).

The complaint only alleges economic loss—the premium price paid for the products or the cost of the products that would not have been purchased. [1] ¶¶ 35–37. Illinois bars recovery under a negligence theory for plaintiffs alleging purely economic loss. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 91 (1982). Illinois recognizes an exception to the economic loss doctrine that applies to professional malpractice claims when a defendant's work product is intangible. *See Congregation*

17

*of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 156–65 (1994); *In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 530 (N.D. Ill. 2011) (finding that the professional malpractice exception didn't apply to retailers selling products to plaintiffs). Letoski says Coca-Cola's "outsized role in the carbonated drinks market" created an extra-contractual duty to provide non-deceptive information to consumers. [22] at 19. But the claims do not relate to professional malpractice on the part of Coca-Cola, and the products here are tangible. The exception does not apply. The negligent representation claim is dismissed.

  **E.**  **Fraud**

  To state a claim for common-law fraud under Illinois law, Letoski must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996). The Illinois Consumer Fraud Act affords broader protection to consumers than the cause of action available under common-law fraud. *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 68 (1994). "Intent" under the Act means "that the defendant intends for the plaintiff to rely on the deception" rather than "the defendant's intent to deceive" under common-law fraud. *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 26.

  While the claim as to the "sparkling soda water" label survives the standard under the Act, Letoski fails to allege specific fraudulent intent for common-law fraud. Intent and knowledge can be alleged generally, Fed R. Civ. P. 9(b), but there's no

18

suggestion that Coca-Cola knew that "sparkling soda water" was a false statement and that defendant intended to defraud consumers. The complaint merely points to defendant's failure to disclose artificial sweetener on the front label in addition to the back-label ingredient list. [22] at 20. While this suggests that the packaging as a whole could be misleading, it amounts only to a conclusory allegation of fraudulent intent. *See, e.g.*, *Rudy v. Fam. Dollar Stores, Inc.*, 583 F.Supp.3d 1149, 1165 (N.D. Ill. 2022) (dismissing common-law fraud claim for deceptive product labeling because plaintiff only alleged that defendant's fraudulent intent was "evinced by its knowledge that the Product was not consistent with its representations"); *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F.Supp.3d 370, 391 (S.D.N.Y. 2021) ("[W]hile the existence of accurate information regarding the product's ingredients on the package does not stymie a deceptive labelling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud.").

### F. Unjust Enrichment

Under Illinois law, unjust enrichment does not constitute an independent cause of action. *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 37. Instead, it is a "condition that may be brought about by unlawful or improper conduct." *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 137 Ill.App.3d 84, 90–91 (5th Dist. 1986). Letoski's request for relief based on unjust enrichment stands or falls with the ICFA claim. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because that claim survives, the request for restitution based on unjust enrichment survives as well.

## IV. Conclusion

Defendant's motion to dismiss, [20], is granted in part and denied in part. Plaintiff Fox's claim is dismissed for lack of personal jurisdiction. The claims under the Illinois Consumer Fraud Act, Vermont Consumer Fraud Act, other state consumer protection statutes, breach of express warranty, and unjust enrichment survive in part. The claims for breach of implied warranty, negligent misrepresentation, and fraud are dismissed. All dismissals are without prejudice.[9]

ENTER:

Manish S. Shah
United States District Judge

Date: October 11, 2024

---

[9] A dismissal for lack of personal jurisdiction is necessarily without prejudice. *See Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022). A first dismissal for failure to state a claim is without prejudice to provide plaintiffs with an opportunity to amend their complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily… a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").